IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE:<br><br>WILLIAM HARTFORD DAYTON and<br>MARCIA ANN DAYTON,<br><br>Debtors. | Case No. 16-30054<br><br>Chapter 7 |

## MEMORANDUM OPINION

Debtor William Dayton received a distribution from an inter vivos spendthrift trust after the settlor died within 180 days after the petition date. Chapter 7 Trustee Patricia Brown contends the distribution constitutes property of William's bankruptcy estate, arguing that it qualifies as a "bequest, devise, or inheritance" within the meaning of § 541(a)(5)(A), and seeks an order compelling William to turn over the distribution. William disagrees, arguing that he did not acquire his interest in the distribution by "bequest, devise, or inheritance" because he received the distribution by operation of an inter vivos spendthrift trust, rather than by will or intestacy. The parties briefed the issue, stipulated to certain relevant facts, and presented evidence and arguments to the court during a hearing on October 26, 2017.

For the reasons set forth below, the court determines that William did not acquire or become entitled to acquire the post-petition inter vivos spendthrift trust distribution by "bequest, devise, or inheritance." Consequently, the distribution is not property of the bankruptcy estate, and the court denies Trustee Brown's motion to compel turnover.

I.  **JURISDICTION**

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1) (2012). This matter is statutorily and constitutionally core under 28 U.S.C. § 157(b)(2)(E). The court

therefore has the authority to hear this matter and make a final determination. No party has contested the court's jurisdiction or authority to make final determinations.

## II. BACKGROUND

The following relevant facts are undisputed. Debtors William and Marcia Dayton filed a joint Chapter 7 petition on February 16, 2016. Less than 180 days later, William's distant relative Rosemary Ault passed away in Colorado. William then received a letter from a Colorado attorney more than a year after the petition date notifying him that Ms. Ault made William a beneficiary of her trust and that he would soon be receiving a distribution. William's counsel notified Trustee Brown of the distribution. Trustee Brown then filed the motion to compel William to turn the funds over as property of the estate. The parties agree that the trust is an inter vivos trust with an enforceable spendthrift provision. We know nothing more about the trust, apparently because Ms. Ault included confidentiality instructions in the trust and the parties were unsuccessful in their attempts to obtain a copy of the trust or any other information about it.

## III. DISCUSSION

As the party seeking turnover, Trustee Brown bears the burden of proving, by clear and convincing evidence, that the distribution is property of the bankruptcy estate. *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990).

When a debtor files for relief under the Bankruptcy Code, § 541(a)(1) creates a bankruptcy estate that includes, with limited exceptions, all of the debtor's legal and equitable interests in property as of the petition date. 11 U.S.C. § 541(a)(1) (2012). Here, the distribution did not become property of the estate at the outset pursuant to § 541(a)(1) because Ms. Ault had not yet passed away. But there is more.

Section 541(a)(5) provides that a property interest acquired by a debtor postpetition

2

becomes part of the bankruptcy estate if it meets three requirements. First, the debtor must acquire or become entitled to acquire the interest within 180 days after the petition date. Second, the interest must be one that would have been property of the estate if the debtor had held the interest on the petition date. Third, the debtor must obtain the interest in one of three methods set forth in § 541(a)(5)(A)–(C)—by "bequest, devise, or inheritance"; through a property settlement with a spouse or divorce decree; or as a beneficiary of a life insurance policy or a death benefit plan.

Like most courts who have addressed similar facts, the parties do not discuss the first two requirements of § 541(a)(5) and, instead, focus on whether William acquired his interest in the distribution "by bequest, devise, or inheritance." The court reasonably could conclude that the parties agree that William's interest in the distribution meets the first two requirements and move on. But does it? The parties agree that the distribution meets the first requirement because William first became entitled to receive the distribution from the inter vivos spendthrift trust upon Ms. Ault's death, which was less than 180 days after the petition date.

It is less clear, however, whether William's interest in the distribution would have been property of the estate had Ms. Ault died just before the petition date, thus calling into question whether it meets the second requirement of § 541(a)(5). The parties did not raise this issue in their papers or argue it at the hearing. Like so many things in life, timing here is everything. The parties agree that § 541(c)(2) ordinarily excludes from the bankruptcy estate a debtor's interest in a spendthrift trust that remains undistributed at filing. *See* 11 U.S.C. §§ 541(a)(1), (c)(2); *Wetzel v. Regions Bank*, 649 F.3d 831, 838 (8th Cir. 2011); *Drewes v. Schonteich*, 31 F.3d 674, 676–77 (8th Cir. 1994). If Ms. Ault had died prepetition and William had received the distribution prior to filing his bankruptcy petition and still held the funds on the petition date, those funds would be property of the estate under § 541(a)(1). *See In re Schauer*, 246 B.R. 384, 387 (Bankr. D.N.D.

3

2000). But what if Ms. Ault had died prepetition and William did not receive the distribution before filing bankruptcy? As stated above, §§ 541(a)(1) and (c)(2) operate to exclude from the bankruptcy estate a debtor's interest in post-petition distributions from an inter vivos spendthrift trust. *See, e.g.*, *Schauer,* 246 B.R. at 388. So, if Ms. Ault had died prepetition and William had not yet received the distribution when he filed bankruptcy, it appears the post-petition distribution would not be part of William's bankruptcy estate, unless Ms. Ault's death somehow triggered the termination of the trust or invalidated the spendthrift protection under the terms of the trust agreement or applicable nonbankruptcy law. *See, e.g.*, *Case v. Hilgers (In re Hilgers)*, 371 B.R. 465 (B.A.P. 10th Cir. 2007). Neither party submitted any evidence—including any relevant provisions of the trust—or argument on this point. Consequently, the court is unable to determine whether the distribution meets the second requirement of § 541(a)(5) for inclusion in the bankruptcy estate. This issue appears academic, however, in light of the court's determination that the distribution does not meet the third requirement.

Trustee Brown contends in her briefing—perhaps using the "kitchen sink" approach—that William received the distribution by bequest, devise, **and** inheritance. That is unlikely, perhaps impossible, under the plan meaning of those terms—because two (bequest and devise) require a will and the other (inheritance) requires that the property pass under the laws of intestacy—and is wrong under the facts before the court.

Neither the Bankruptcy Code nor any relevant state court decision defines the terms "bequest, devise, or inheritance." Black's Law Dictionary defines an inheritance as "property received from an ancestor under the laws of intestacy." *Black's Law Dictionary* 903 (10th ed. 2014). Bequest means "the act of giving personal property by will." *Id.* at 189. Devise means "[t]he act of giving property by will." *Id.* at 547. The Missouri and Colorado probate codes do

4

not define inheritance or bequest, but both provide that the term devise when used as a noun, "means a testamentary disposition of real or personal property" and, when used as a verb, "means to dispose of real or personal property [or both] by will." Colo. Rev. Stat. § 15-10-201(12) (2015); Mo. Rev. Stat. § 472.010(7) (1986).[1] The term testamentary means "created by will." *Black's Law Dictionary* 1703 (10th ed. 2014).

By process of elimination, it becomes clear that William did not receive the distribution by bequest, devise, or inheritance according to the plain meanings of those terms. There is no evidence that Ms. Ault died intestate or that William somehow inherited the distribution under the laws of intestacy. This eliminates "inheritance." There is also no evidence that Ms. Ault died testate (*i.e.*, with a will) or that William's distribution from the trust came by way of a disposition under a will. This eliminates both "bequest" and "devise." Other courts agree.

Whether a debtor's right to receive a post-petition trust distribution that arises during the 180-day period qualifies as a "bequest" or "devise" depends on the type of the underlying trust— testamentary or inter vivos. *See, e.g.*, *Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1154 (7th Cir. 1990) (construing Missouri law and concluding that distributions from inter vivos spendthrift trusts do not qualify as "by bequest, devise, or inheritance"); *Schauer*, 246 B.R. at 388 (distinguishing testamentary and inter vivos trusts and concluding that distributions from inter vivos trust are not property of the estate); *In re Crandall*, 173 B.R. 836, 839 (Bankr. D. Conn. 1994) (concluding that distributions from inter vivos trust not within the plain meaning of § 541(a)(5)(A)); *Gordon C. York, Inc. v. Kragness (In re Kragness)*, 58 B.R. 939, 944 (Bankr. D. Or. 1986) (concluding that income distributions from testamentary trusts within 180 days after the petition date are property of the estate). Unless excluded from the estate by § 541(c)(2) because

---

[1] The parties stipulated at the hearing that the Missouri and Colorado Probate Code definitions, while slightly different, are materially the same.

of an enforceable spendthrift provision, a distribution from a testamentary trust qualifies as a bequest or devise because testamentary trusts themselves necessarily arise by operation of a will—distributions from such trusts are quite literally property interests "created by will" and they therefore qualify as testamentary distributions. *Kragness*, 58 B.R. at 944. In contrast, distributions from inter vivos trusts do not qualify as bequests or devises because inter vivos trusts are not created by will. *See, e.g.*, *Newman*, 903 F.2d at 1153–54; *Schauer*, 246 B.R. at 388. Here, William received the distribution by operation of an inter vivos trust. Consequently, he did not receive the distribution by bequest or devise under the plain meaning of those terms.

Though the distribution in this case does not qualify as a devise under the plain meaning of that term, Trustee Brown alternatively argues the distribution constitutes a devise in practical effect. She asks the court to ignore the plain meaning of "devise" and, instead, adopt a new, broader definition that includes will substitutes like an inter vivos trust when the settlor's death triggers the distribution. But her focus on Ms. Ault's death as the triggering event misses the point. By definition, testamentary trusts are created by the settlor's will. Inter vivos trusts are not. Testamentary trust distributions always follow the settlor's death—although the trigger might be something other than the settlor's death. Inter vivos trust distributions might occur before or after, and might or might not relate to, the settlor's death—for example, the beneficiary might receive the distribution upon reaching a certain age. Even if the settlor's death happens to trigger an inter vivos trust distribution, it is still not "by devise." That is especially true here, where there is no evidence that Ms. Ault even had a will. Congress limited the types of interests that come into the bankruptcy estate pursuant to § 541(a)(5) and did not introduce those interests with words like "includes" or "including." This creates a presumption that § 541(a)(5)(A) is limited to interests acquired "by bequest, devise, or inheritance" and does not include will substitutes such as inter

6

vivos trusts. *Newman*, 903 F.2d at 1154. This court agrees with those who distinguish between testamentary and inter vivos trust distributions and declines Trustee Brown's invitation to expand the use of "devise" in § 541(a)(5)(A) beyond its plain meaning.

Finally, Trustee Brown contends that this court in three prior cases has construed "bequest, devise, or inheritance" to include all trust distributions: *In re Collett*, 253 B.R. 452, 454 (Bankr. W.D. Mo. 2000), *Harkins v. Patterson (In re Patterson),* 70 B.R. 124 (Bankr. W.D. Mo. 1986), and *In re Goulding*, 79 B.R. 874 (Bankr. W.D. Mo. 1987). However, each of those cases differs materially from this case. The court in *Collett* was asked to determine whether a debtor's interest in an annuity he received under a testamentary trust qualified for exemption under Mo. Rev. Stat. § 513.430(10)(e), and colloquially referred to the annuity as an "inheritance." *Collett*, 253 B.R. at 454. The issue in *Patterson* was whether the court should deny the debtor's discharge based on an alleged failure to disclose an interest in a distribution from a testamentary spendthrift trust, and the court never addressed whether that interest was property of the estate. Finally, the court in *Goulding* summarily concluded that distributions from spendthrift trusts "within six months of the filing date of the bankruptcy petition become property of the estate" but did not analyze the terms "bequest, devise, or inheritance." *Goulding*, 79 B.R. at 876 (citing § 541(a)(5)(A)). Those decisions do not alter the court's interpretation of "bequest, devise, or inheritance" in this case.

Finding the cases Trust Brown cites inapposite, the court believes the plain meaning of "bequest, devise, or inheritance" compels it to conclude that the inter vivos spendthrift trust distribution to William does not qualify as a "bequest, devise, or inheritance" under § 541(a)(5)(A).

### IV.   CONCLUSION

For the reasons set forth above, the court denies Trustee Brown's motion to compel turnover. This Memorandum Opinion constitutes the court's findings of fact and conclusions of

law under Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.  The court will issue a separate order on the docket.


Dated: 1/26/2018                                    /s/ Brian T. Fenimore
                                                                HONORABLE BRIAN T. FENIMORE
                                                               United States Bankruptcy Judge